# Carmalt *against* Platt.

A contract for the purchase and sale of a mill and land, and embracing other matters connected, in the contemplation of the parties at the time, with the enjoyment and profits of the mill, will be considered an entire contract, so as to enable the vendor to enforce performance of it by ejectment, upon the legal title retained by him.

In an action of ejectment to enforce the specific performance of a contract for the purchase and sale of land, evidence of improvements made by the vendee, or the enhancement in value of the land since the date of the agreement, is immaterial and irrelevant to the issue, and it is error to receive it.

The rule which requires the best evidence the nature of the case will admit to be given, will not be strictly applied to the case of testimony given to the court, upon an objection to a witness, to establish his incompetency by proof of his interest.

ERROR to the common pleas of *Susquehanna* county.

Caleb Carmalt against Samuel Platt. Ejectment for ten acres of land and a saw mill. This action arose out of the following contract for the sale of the land in dispute by the plaintiff to the defendant:

"Articles of agreement made the 14th day of January A. D. 1835, between Samuel Platt of the one part, and Caleb Carmalt of the other part, witnesseth, that the said Samuel Platt for himself, his heirs, executors and administrators, doth covenant and agree to procure from off the lands hereinafter described, sixty thousand feet of white pine boards, the timber for making of which shall be cut clear as it stands on the land, and the boards, when made, to be piled or stacked up and covered, so as to secure them from decay and fit them for market, to be delivered at the mill hereinafter mentioned, or at some other place equally convenient for hauling to the said Caleb Carmalt's residence: and the said Caleb Carmalt agrees to grant and convey unto the said Samuel Platt ten acres of land, with the mill and improvements thereon erected, lately belonging to Edward Cox, situate on the west branch of Choconut creek, in Choconut township, adjoining and lying south of the lot contracted for by Isaac Addison, and adjoining and lying west of the lot of Joseph Addison;

[Carmalt v. Platt.]

together with the right and privilege of entering upon the land of said Caleb Carmalt, adjoining on the west to the extent of three hundred acres (being the two lots originally surveyed for Edward Cox and Walter Slater) bounded by the New York state line, by the lots of Isaac and John Addison, by John Seymour, and by the lot surveyed for William Alloway, and to cut, haul and carry away pine timber growing and lying thereon, and the same to use, saw and dispose of for his own benefit and advantage.

"And the said Caleb Carmalt further agrees to perform the contract made with the said Samuel Platt, relative to the erection of a dam upon the said stream, as far as to pay the 50 dollars in neat stock or oxen mentioned and expressed in the said contract (dated 20th August 1834), whenever the same is completed according to the said contract; and also to pay the said Samuel Platt for the above mentioned lumber the sum of 300 dollars, when the same is sawed, piled, stacked and delivered as aforesaid.

"And the said Samuel Platt further agrees to pay for the said mill and the privilege above mentioned and set forth, the sum of 525 dollars, to be paid in lumber at the customary prices, and to pay therefor at the rate of five per cent per annum, until the time appointed for delivering the said lumber, piled, stacked and covered as aforesaid; the payments to be made as follows, to wit, fifteen thousand feet of lumber in each and every year until the whole amount be paid; and further it is understood and agreed by and between both the said parties, that nothing herein contained shall be so construed as to impair the right of said Caleb Carmalt or prevent him or his representatives from selling or disposing of the said three hundred acres of land or any part thereof, always reserving unto the said Samuel Platt the full and exclusive right of privilege of cutting and carrying away the said pine timber as aforesaid, which is to be done by him whenever such purchasers may wish to clear the land, and shall notify him thereof; and in default of removing the timber, the said Caleb Carmalt shall be entitled to recover in the same manner as if the said Samuel Platt had removed the same; the purchaser to give him three months' notice to remove the pine timber from every twenty acres he may wish to clear."

After the agreement was read to the jury, much evidence was given on the subject of a part performance of the agreement, in which the plaintiff established the fact that much of the lumber he had received upon the contract was not merchantable, and a large portion of that which the defendant was to give him was not delivered at all.

The defendant offered to prove that since he had obtained the possession of the mill and land he made valuable improvements upon it.

This evidence was objected to by the plaintiff as irrelevant, but the court overruled the objection and the evidence was given; the court sealed a bill of exception.

[Carmalt v. Platt.]

The plaintiff offered John S. Peironnett as a witness, to whose competency the defendant objected on the ground of interest, and called a witness to prove to the court " that he saw in possession of Peironnett a deed to him from the plaintiff for the land mentioned in the agreement, and that Peironnett told the witness that he had purchased the land from Carmalt." This evidence to the court was objected to because it was not the best evidence; the deed itself should have been produced. The court heard the evidence and rejected the witness. Plaintiff excepted.

The plaintiff also offered to show that the property was enhanced in value by proving what was its value at the time of trial. This was objected to by the defendant; but the court overruled the objection and sealed an exception.

The jury gave the following verdict.

" In the above suit we find for the defendant, for the lumber, in the amount of 75 dollars and 35 cents with costs."

Upon which the court directed the verdict to be entered generally " for the defendant with costs."

The opinion of the Court was delivered by

ROGERS, J.—This suit is brought to enforce the performance of a contract. The defendant, as the plaintiff alleges, failed to deliver, according to the articles, sixty thousand feet of white pine boards within a reasonable time, and also fifteen thousand feet of lumber in each and every year. The defendant alleges that he has performed his contract according to its true intent and meaning; but the parties differ as to the construction of the agreement, and this is the first question to be decided. The defendant contends that the delivery of the sixty thousand feet of boards is independent of the contract for the sale of the mill and ten acres; but the plaintiff insists, on the other hand, that it is an entire contract, and that the delivery of the sixty thousand feet of boards, and the payment of the 525 dollars, in the manner specified, is the consideration for the conveyance of the mill and ten acres, and the privileges to cut lumber as granted to the defendant. We are of opinion the contract is entire. Platt covenants to deliver to Carmalt sixty thousand feet of white pine boards, and also to pay the sum of 525 dollars in lumber, at the customary prices, with interest, &c., at the rate of fifteen thousand feet in each and every year, until the whole amount is paid. In consideration whereof, Carmalt agrees to convey to plaintiff the mill and ten acres of land with the right and privilege of entering and cutting and taking lumber from an adjoining tract of three hundred acres. He further agrees to pay, on the delivery of the sixty thousand feet of lumber, the sum of 300 dollars. The latter was without doubt a mutual benefit, and was so intended. It enables Platt to provide the means of paying for the property in cash if so disposed, and further, it amounts to a sale of the timber of Carmalt, which would otherwise be unproductive. By the arrangement, Carmalt gets lumber in its

[Carmalt v. Platt.]

manufactured state worth 9 dollars per thousand, for 5 dollars; leaving a clear profit on the sale of his lumber of 4 dollars per thousand. It is very plain, that the various interpretations of the agreement (all of which it is useless to state) are so dependent, that the one would have not been entered into by either party without the other. They constitute one whole. In the articles, when they come to the covenant on the part of Platt, the language following is used: " and the said Samuel Platt further agrees (that is to say, in addition to the delivery of the sixty thousand feet of boards) to pay for the saw mill, and the privileges above mentioned and set forth, the sum of 525 dollars, to be paid in lumber at the customary prices." By the privileges above mentioned and set forth, is meant, the right which Platt acquired to enter upon, &c. the said three hundred acres belonging to Carmalt, and which adjoined the land which Carmalt agreed to convey : in the agreement no time is fixed for the delivery of the boards ; but the defendant is not bound to deliver them immediately, but he has a reasonable time for that purpose, of which the jury must judge. It follows from this, that if the defendant has failed to perform the contract in this particular, the plaintiff is entitled to a verdict. But the plaintiff insists from this, that the defendant has altogether failed in the performance of the contract, inasmuch as the lumber which he delivered in discharge of his engagement was not of a merchantable quality. But whether it were or not is immaterial, if accepted by the plaintiff. It is very true, that he was not bound to receive cullings, or lumber which was not merchantable ; but he should have taken the objection at the time. It is too late to complain after having received it without objection. The defendant contracted to deliver seventy-five thousand feet of lumber in each and every year, until the 525 dollars were paid, at the customary prices; that the injury which will result to the plaintiff will be the prolongation of the time for the payment of the purchase money ; for he is compelled only to pay the value of the lumber according to the quality. By accepting the lumber, he waives all exception of that kind. It would be a surprise to the defendant to allow the exception now, after he has induced the defendant to believe that, in this respect at least, he has faithfully complied with his engagements.

The court permitted the defendant to give evidence of repairs and improvements to the mill, of the value of the property, and that it is enhanced in price. Why this evidence was deemed material, we are at a loss to conjecture. The point in issue is, whether the defendant has performed his contract ; and whether the property is improved, or is more or less valuable, cannot affect that question. If the defendant has failed in his engagement, he acquires no equity from the improvement of the property, or its enhancement in value. The court and counsel would seem to have viewed this action as intended to rescind the contract, or to enforce a forfeiture as in the case of an estate on condition. But this is an entire mistake of the nature

VII.—2 c

[Carmalt v. Platt.]

of the suit. The plaintiff retained the legal title to the premises, and the ejectment is brought as on an equitable mortgage, to compel the defendant to perform the contract by payment of the purchase money, or otherwise to comply with the stipulations of the agreement. The ejectment is in the nature of a bill in chancery, which the jury, under the direction of the court, may mould into such a shape as to do substantial justice. If the jury should believe that the defendant has performed his contract, he is entitled to a verdict; but if, on the other hand, they think he has failed in whole or in part, he may be enforced to do his duty by a conditional verdict for the plaintiff, to be released upon a compliance, &c. at a time to be fixed and ascertained by the jury. The jury should also ascertain and find specially, in what particular the defendant has failed to perform, in order that he may know what he is required to do to retain the possession of the land. It will also be the duty of the jury to consider, whether, as the defendant alleges, the parties came to a new agreement, on a different consideration, as to the delivery of the fifteen thousand feet of lumber; for if they have, the defendant is entitled to the benefit of it.

The plaintiff further complains of the rejection of Peironnett as a witness. To exclude the testimony, the defendant proved as follows: "a year ago last winter, Peironnett showed me (the witness) a contract or deed with Carmalt: Carmalt's name was to it. It was for a lot of land surveyed to Cox, and of which Platt was then in possession. Peironnett said he was the owner of the land. That was his deed for it." If the witness is believed, the deed embraced the land in dispute, and clearly shows an interest in Peironnett. The objection was that it was not the best evidence, and that a *subpœna duces tecum* should have been served on Peironnett to produce the deed. Whether Peironnett would be bound to produce a deed in such a case, I shall not inquire. To show interest in a witness, you have one of two modes. To examine the witness on his *voir dire*, or to show an interest by testimony *aliunde*. But what is the precise nature of the testimony required in the latter case, has not been directly decided. Proof of the confessions of a witness that he is interested or otherwise incompetent, will not exclude him; but proof that the party by whom the witness is called has acknowledged or declared him to be interested is sufficient to exclude him. Pierce *v.* Chase, 8 *Mass. Rep.* 487. This principle has been also ruled in this state, although decided otherwise in other states, but upon very questionable grounds. The cases would seem to show, that the same strictness of proof is not required when the inquiry is a preliminary one for the court, as this must depend in a great measure on their sound discretion. There is but little danger in relaxing the rule on such an inquiry that the best evidence must be produced, although I admit that the court should not exclude a witness on slight grounds, as it is better in a doubtful case of interest to re-

[Carmalt v. Platt.]

fer the whole matter to the jury. It cannot be expected that a party, in anticipation that an interested witness will be offered, will at all times be prepared with the best evidence to show his incompetency; hence other and inferior evidence may be sufficient to exclude a witness. Here, although the deed was not produced, nor notice to produce it given, yet its existence was proved by a person who saw it.

For these reasons we think the point was correctly ruled; we do not think proper to interfere on legal grounds in a case where something must be left to the discretion of the court, who are more cognizant of the circumstances than we can be.

Judgment reversed, and a *venire de novo* awarded.