### C. W. Turner v. L. Goodman et al.

1. CONTRACTS—*Remedies on Partial Performances.*—Where a party in good faith partially performs the terms and conditions of a contract on his part and the other party receives the benefits of such partial performance and does not nor can not restore to the party performing the fruits of such partial performance and place him in *statu quo*, the consideration may be recovered, less any damages suffered by reason of his failure to fully perform the contract.

Bill of Interpleader.—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed July 16, 1900.

Statement by the Court.—The Evans-Snider-Buel Co., a corporation, filed its bill of interpleader in the Superior

Court of Cook County, stating that it had in its hands the sum of $1,383.98, which it was willing to turn over to the party entitled thereto, but that the appellant, Turner, and the appellee Goodman, both claimed the money and were threatening to sue complainant, who offered to pay the money into court, and prayed that the defendants might be required to interplead and settle their differences.

The bill was answered by both Turner and Goodman, and after issues made, the cause was referred to a master to take proofs and report the same, together with his conclusions thereon. The master having taken the evidence and made his report, objections thereto of Turner having been ordered to stand as exceptions, the court entered an interlocutory decree, directing the complainant to pay into court the amount in its hands, less costs of $261.95, ordered the defendants, Goodman and Turner, to interplead, and thereafter overruled the exceptions of Turner to the master's report, approved the same and decreed that the balance of the moneys, amounting to $1,122.03, be paid to Goodman. From this decree Turner has appealed. The appellant, Turner, as it is conceded, gets his rights, if any, through Lacey, and has no other or greater rights.

The master, among other things, finds that the defendants, Goodman and Lacey, entered into a contract, dated March 26, 1898, by which Lacey agreed to pasture for Goodman 3,000 cattle on his pasture lands in Indian Territory, at $1 per head, and receive the cattle as they arrived from Texas, place them in the pasture, to round up the cattle and deliver them on cars at Holdenville as Goodman might direct, to furnish sufficient salt, grass and water to fatten the same, to pay one man, to be named by Goodman, $25 per month and furnish him board and horses to ride, the man to be under order of Goodman, and to be given sufficient time to fully look after Goodman's interests, Goodman to pay Lacey $1 per head on all cattle delivered, $500 cash, balance on delivery and shipment, Lacey to deliver to Goodman all said cattle except those that should die a natural death, and to deduct from last payment the

value of all cattle not delivered except those lost through natural death; that pursuant to the contract, Goodman gave to Lacey his note for $2,500, due October 20, 1898, subject to the contract between them, and also a writing authorizing Lacey to place the note with complainant for collection; that April 5, 1898, in consideration of the note Lacey executed a waiver of his lien for pasturage, and made it subject to a chattel mortgage by Goodman to the complainant, which was held by the latter, the complainant being made Goodman's trustee, to pay Lacey the amount due him on his pasture contract from a sale of the cattle; that one Berry was a partner of Lacey and shared equally with him in any profits for pasturing the cattle, and who on June 4, 1898, drew a draft on Lacey to pay Turner his, Berry's, half interest on the pasture contract, amounting to $1,500, and on August 23, 1897, Turner sent the draft to complainant for collection, at the same time notifying it that he was to receive the first moneys to be paid on the Goodman note up to the sum of $1,500; that on October 7, 1898, Goodman notified complainant not to pay any money on the pasture contract on account of Lacey's failure to carry out the contract; that without such notice complainant was bound not to pay Lacey except upon a showing that the pasture contract was performed; that Lacey and Berry did not perform the pasture contract, in that they failed to furnish sufficient grass to fatten the cattle, so that the cattle at the end of the rainy season were unfit for market; that October 7, 1898, the complainant, with the consent of Goodman, sold the remainder of the cattle, a part of them having been sold in the July previous, and as a result of such sales there remained in the hands of the complainant, after the payment of its mortgage, the amount alleged in the bill.

The master concludes "that Turner has not shown by a preponderance of evidence that Lacey furnished sufficient grass to fatten the cattle according to contract to entitle him or Turner to surplus in complainant's hands; that the failure of Lacey to furnish sufficient grass, goes to the root

of the pasturage contract and constitutes a failure of the entire consideration therefor; finds that said contract does not provide that cattle were to be pastured for any definite time, and if Goodman took away cattle at any time after their arrival Lacey would be entitled to one dollar per head if he furnished sufficient grass, water and salt; that Goodman had right to remove cattle at any time."

JOHN S. HUEY, attorney for appellant.

No appearance for appellees.

MR. JUSTICE WINDES delivered the opinion of the court.

We have not been favored by appellees with any brief, and may therefore assume, by analogy to decisions of this and the Supreme Court holding that parties failing to argue errors assigned upon the record have abandoned the same, that appellees, if they have not abandoned their claims under the decree in this case, are at least indifferent as to the result of this appeal.

We have, however, carefully read and considered the abstract of the record in this case, and have reached the conclusion that the master, as well as the learned chancellor who entered the decree confirming the master's report, proceeded upon a wrong theory as to the law governing the case, and that the report and decree in favor of the appellee Goodman, is not sustained by the evidence.

A reference to the master's report shows that he held that inasmuch as Lacey failed to perform the pasture contract, by furnishing sufficient grass to fatten the cattle, that this goes to the entire consideration of the contract, and precludes Lacey or his assignee, Turner, from any right of recovery whatever, thus apparently leaving out of consideration a rule of law that where a party has in good faith partially performed the terms and conditions of a contract on his part, and the other party has received the benefit of such partial performance, and does not or can not restore to the other the fruits of such partial perform-

ance and place him in *statu quo*, then the consideration of
the contract must he paid, less any damages suffered by
reason of the failure to perform the contract.   2 Parsons
on Contracts, p. 523, 529;  Underwood v. West, 52 Ill. 397;
Wolf v. Dietzsch, 75 Ill. 205;  Smith v. Brittenham, 109 Ill.
540;  Underwood v. Wolf, 131 Ill. 425.

The evidence shows that Lacey pastured all the cattle,
near 3,000 in number, delivered to him by Goodman; that
these cattle, except a small number, were delivered by
Lacey, with Goodman's consent, to his mortgagee and sold,
thus giving to Goodman, without any dispute, the benefit
of Lacey's pasture to fatten this large number of cattle a
whole season of six months, less twenty-four days, without
any compensation except a payment of $500 to Lacey, and
without reference to any damage suffered by Goodman.

Moreover, so far as appears from the master's report, he
did not consider the question of damages to Goodman, nor
is there any evidence in the record, so far as we have been
able to discover, which would have justified the master or
court in finding that Goodman had suffered any damages
by reason of the alleged failure of Lacey to furnish suf-
ficient grass for the cattle.

The contract is also indefinite in that it fails to provide
that the cattle were to be pastured any definite time, and
there is evidence to the effect that the season for fattening
cattle in Indian Territory extended from April to Novem-
ber; that Goodman consented to a portion of the cattle
being sold in July and the remainder on the 7th of October,
thus leaving twenty-four days that the remaining portion
of the cattle might have remained upon the pasture, and
for all that this record shows, fattened, and besides this, it
does not appear that Goodman or his representative made
any complaint as to the insufficiency of the grass until
October 7th, when he agreed that the cattle might be sold
by the complainant, although he was frequently before that
time at the pasture, and his representative was continually,
during the season up to that time, looking after the cattle
and his, Goodman's, interest in respect thereto.

From a careful consideration of the evidence we also are of opinion that the clear preponderance of the evidence shows that Lacey did furnish sufficient grass to fatten the cattle if they had been allowed to remain upon the pasture the full season. In any event we think the evidence in this record is sufficient to preclude Goodman from claiming any damages in that regard.

For the errors indicated the decree is reversed and the cause remanded for further proceedings consistent with the views above indicated.

Reversed and remanded.